UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LORA DENISE ALLISON,                                                                    PLAINTIFF

V.                                                           CIVIL ACTION NO. 3:21-CV-58-HTW-RPM

COMMISSIONER OF
SOCIAL SECURITY,                                                                        DEFENDANT

**REPORT AND RECOMMENDATION**

## I.     INTRODUCTION

On January 28, 2021, plaintiff Lora Denise Allison ("Allison") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the defendant Commissioner of Social Security ("Commissioner") of her application for disability insurance benefits under Title II of the Social Security Act ("SSA") and supplemental security income under Title XVI of the SSA. Doc. [1].

## II.     Procedural History

On August 30, 2018, Allison filed for benefits. Doc. [11], at 24. Her claims were denied initially and upon reconsideration. *Id.*, at 72–101. Thereafter, Allison requested a hearing before an Administrative Law Judge ("ALJ"). *Id.*, at 133. Allison failed to appear at her first hearing. *Id.*, at 159. Allison later explained that car troubles prevented her attendance. *Id.*, at 162. Accepting these reasons, the ALJ rescheduled Allison's hearing for April 8, 2020; Allison, proceeding *pro se*,[1] attended this hearing. *Id.*, at 41–64.  On April 29, 2020, the ALJ ruled that Allison was not entitled to benefits. *Id.*, at 21–40. Through newly-obtained counsel, Allison filed a request for review with the Appeals Council on June 24, 2020. *Id.*, at 20. The Appeals Council received

---

[1] After Allison failed to appear at her first hearing, Allison's first attorney withdrew. Doc. [11], at 162–63.

1

Allison's filing via mail on June 29, 2020. Doc. [13], Ex. 1. Despite receiving her filing on June 29, 2020, the Appeals Council inexplicably concluded that Allison filed her request for review on July 24, 2020. Doc. [11], at 14; [13], Ex. 1. Finding that Allison's filing was untimely, the Appeals Council extended her filing deadline to September 15, 2020. *Ibid.* On November 12, 2020, Allison filed additional medical records. Doc. [13], Ex. 2. Without addressing Allison's additional evidence, the Appeals Council dismissed Allison's request for review as untimely on November 24, 2020. Doc. [11], at 8. This action followed. Doc. [1].

### III. Relevant Facts

#### A. Early Medical Records

Allison has an extensive history of shoulder problems. Doc. [11], at 277, 280, 282. In 2016, Allison underwent arthroscopic surgery on her left shoulder. *Id.*, at 277, 282. While Allison complained of postoperative pain and limited range of motion, contemporaneous MRI results did not suggest a further rotator cuff tear at that time. *Ibid.* On August 3, 2017, while unloading a heavy object at work, Allison injured her right shoulder. *Id.*, at 280, 306, 310. Upon examination, Larry D. Field, MD ("Dr. Field") initially found little evidence of an "obvious full-thickness rotator cuff tendon tear." *Ibid.* However, Dr. Field later discovered shoulder impingement syndrome and a muscle/tendon strain and promptly scheduled Allison for surgery. *Id.*, at 279–80, 283. On November 8, 2017, Allison underwent successful arthroscopic right shoulder surgery. *Id.*, at 283, 310. During check-ups shortly thereafter, Dr. Field opined that Allison was able to return to her past work so long as she avoided lifting. *Id.*, at 283, 285.

### B.  Relevant Medical Opinions

#### i.  Frankie Pedigo, MD

On October 27, 2018, Frankie Pedigo, MD ("Dr. Pedigo") performed a consultative examination. Doc. [11], at 287–93. According to Dr. Pedigo, Allison only suffered from one medical impairment: shoulder pain. *Id.*, at 293. While observing that Allison was only capable of rotating her right shoulder 120 degrees instead of a full 150 degrees, Dr. Pedigo continued that Allison could "perform all overhead reaching and behind the back reaching without pain or crepitation." *Ibid.* Similarly, Dr. Pedigo opined that Allison had "insignificant" lifting limitations and only mild carrying limitations. *Ibid.* Dr. Pedigo further opined that Allison neither had limitations in connection with walking, standing, sitting, bending, stooping, crouching, squatting, reaching grasping, handling, fingering, and feeling nor any relevant visual, communicative, or workplace environmental limitations. *Ibid.*

#### ii.  Glenn James, MD

On November 9, 2018, Glenn James, MD ("Dr. James") reviewed the available medical records and formed his own medical opinion. Doc. [11], at 76–87; 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). He determined that Allison suffered from two medically-determinable, non-severe impairments: (i) degenerative disc disease ("DDD"), and (ii) major joint dysfunction ("MJD"). Doc. [11], at 80, 86. However, Dr. James also opined that Allison's subjective symptoms of pain were consistent with the objective medical evidence. *Ibid.* Ultimately, Dr. James concluded that Allison had no limitations, was capable of all work, and, ultimately, not disabled. *Id.*, at 81, 87.

#### iii.  Madena Gibson, MD

On December 19, 2018, Madena Gibson, MD ("Dr. Gibson") reviewed the available medical records and formed her own medical opinion. Doc. [11], at 90–103; 20 C.F.R. §§ 404.1513(a)(2),

416.913(a)(2). Dr. Gibson also determined that Allison suffered from DDD and MJD. Doc. [11], at 94, 101. Allison's subjective pain symptoms were consistent, she opined, with the objective medical evidence. *Id.*, at 95, 102. Ultimately, Dr. Gibson concluded that Allison had no limitations, was capable of all work, and, therefore, not disabled. *Ibid.*

### C. Later Medical Records

After all medical opinions of record were issued, Allison's overall physical condition began to deteriorate. *See*, *e.g.*, Doc. [11], at 304, 306–7. Reviewing a January 7, 2019 MRI on that same date, Dr. Field observed that Allison suffered a "high grade (50th–75% thickness) articular surface tear involving the critical zone of the supraspinatus and infraspinatus tendons with tendonsis" as well as moderate glenohumeral joint arthritis. *Id.*, at 301, 305. During a February 4, 2019 check-up, Dr. Field concluded that Allison could only return to "light duty." *Id.*, at 301–2. While the specter of additional surgery was also raised, Dr. Field suggested more conservative treatment at first. *Id.*, at 301–2. During a March 11, 2019 visit, Allison reported new numbness running along her right arm. *Id.*, at 303. After an MRI was performed on Allison's neck, Robert W. Morris, MD ("Dr. Morris") discovered (i) "severe right and left forminal stenosis" in Allison's C7–T1 vertebrae; (ii) "joint hypertrophy . . . causing moderate right and high-grade left forminal stenosis" in her C5–C6 vertebrae; and (iii) "high-grade bilateral forminal stenosis" in her C6–C7 vertebrae. *Id.*, at 306–7. After reviewing Dr. Morris' findings, Dr. Field referred Allison to a neck specialist. *Id.*, at 304, 306–7.

At this time, Dr. Field also referred Allison for physical therapy and a nerve-conduction study. Doc. [11], at 310–13. Allison was scheduled to attend physical therapy for four weeks. *Id.*, at 318–27. After two weeks, however, Allison stopped attending because she felt that the treatment was ineffective. *Ibid.* After performing a nerve-conduction study on April 24, 2019, Allan Moore, MD

4

concluded that Allison only suffered from "very mild" ulnar neuropathy in her elbows; he found no evidence of median neuropathy, polyneuropathy, myopathy, or "active right cervical radiculopathy." *Id.*, at 329.

The medical records provided to the ALJ abruptly conclude in April 2019.

### IV.     ALJ's Opinion

In her opinion, the ALJ made the following findings of fact. First, the ALJ concluded that Allison has not engaged in substantial gainful activity since March 2, 2017. Doc. [11], at 27. The ALJ further found that Allison suffers from three severe medical impairments: cervical DDD, lumber DDD, and degenerative joint disease ("DJD") in her right shoulder. *Ibid.* Next, the ALJ concluded that Allison did not suffer from a severe impairment or combination of impairments that meets or medically equals the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*, at 27–28.

Turning to Allison's residual functional capacity ("RFC"), the ALJ concluded that Allison could perform "light work" with one additional limitation–she could only occasionally reach overhead with her right arm. Doc. [11], at 28–33. Thereafter, the ALJ concluded that Allison could not return to her past relevant work. *Id.*, at 33. At step five, the ALJ found that Allison (i) was an individual "closely approaching retirement age" because she was 51 years old when she filed for benefits, and (ii) had a limited education. *Id.*, at 33. Thereafter, considering her age, education, work experience, and RFC, the ALJ concluded that a significant number of jobs, around 150,000, existed in the national economy that Allison could perform, including as a mail clerk, office helper, and merchandise marker. *Id.*, at 33–34. Thus, the ALJ concluded that Allison was not disabled. *Id.*, at 34–35.

5

## V.     Additional Medical Evidence

On July 3, 2019, William B. Gessler, MD ("Dr. Gessler") performed an independent medical examination ("IME") on Allison. Doc. [13], Ex. 2, at 1. During this exam, Allison reported "minimal complaints" and "significant[] improvement" in connection with 2019 surgery. *Id.*, Ex. 2, at 6. While predicting that no additional surgery would be required, Dr. Gessler continued that Allison probably reached her "maximum medical improvement." *Id.*, Ex. 2, at 6, 8. However, Dr. Gessler further opined that Allison was unable to ever lift over her head and incapable of pushing, pulling, or lifting more than 10 pounds. *Ibid.* On November 12, 2020, Allison submitted these additional medical records to the Appeals Council. Doc. [13], Ex. 2.[2]

## VI.     Standard of Review Generally

Under 42 U.S.C. § 405(g), the Court's review is limited to two inquiries: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, —— U.S. ——, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quotation omitted). It is "more than a mere scintilla and less than a preponderance.'" *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quotation omitted). Finally, "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002)).

---

[2] The Commissioner concedes that Allison submitted this additional evidence to the Appeals Council before it dismissed her request for review as untimely. Doc. [14], at 7. Allison's exhibits support the same conclusion. Doc. [13], Ex. 2, at 1.

## VII.     Five-Step Process Generally

A claimant is "disabled" as defined in the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled. The steps include: "(1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 271–72).

The burden of proof is on the claimant at the first four steps. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301–2 (5th Cir. 1987). If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that he could not perform the alternative work identified. *Id.* at 1302. Throughout the process, the ultimate burden of establishing disability remains with the claimant. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). "A finding at any step that the claimant is not disabled ends the inquiry." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citing *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

## VIII. <u>ANALYSIS</u>

### A. Subject-Matter Jurisdiction

Under the SSA, judicial review is only available for "any final decision . . . made after a hearing." 42 U.S.C. § 405(g). In 2019, the Supreme Court resolved a split between the circuits on the question of whether "a dismissal for untimeliness, after the claimant has had an ALJ hearing, is a 'final decision . . . made after a hearing' for purposes of allowing judicial review under [Section] 405(g)." *Smith v. Berryhill*, ––– U.S. –––, 139 S.Ct. 1765, 1772–73, 204 L.Ed.2d 62 (2019). Prior to *Smith*, a majority of the circuits, including the Fifth Circuit, held that dismissal of a claimant's request for review as untimely did not constitute a "final decision" and, therefore, the federal courts lacked subject-matter jurisdiction to hear an appeal from such a decision. *See*, *e.g.*, *Harper by Harper v. Bowen*, 813 F.2d 737, 739 (5th Cir. 1987). On the other hand, two circuits held that the courts have subject-matter jurisdiction to consider an appeal from such a decision. *See*, *e.g.*, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Agreeing with the minority approach, the Supreme Court held that "where the . . . Appeals Council has dismissed a request for review as untimely after a claimant has obtained a hearing from an ALJ on the merits, that dismissal qualifies as a 'final decision . . . made after a hearing' within the meaning of [Section] 405(g).'" *Smith*, 139 S.Ct. at 1780, 204 L.Ed.2d 62. Since Allison's request for review was dismissed by the Appeals Council as untimely after she had an ALJ hearing, the Court has subject-matter jurisdiction to hear Allison's present appeal. *See*, *e.g.*, *Ransom v. Comm'r, SSA*, No. 4:19–CV–709–CAN, 2020 WL 5632683, at *2 (E.D. Tex. Sept. 21, 2020).

### B. Threshold Consideration of Timeliness

#### i. Scope & Standard of Review

In *Smith*, the Supreme Court also identified the (i) applicable standard of review and (ii) scope of the Court's threshold review. *Smith*, 139 S.Ct. at 1779 n.19, 204 L.Ed.2d 62. The Court begins with the applicable standard of review at the threshold. When considering the "overall record," the Court applies an abuse of discretion standard. *Ibid.* "An 'abuse of discretion' occurs when a decision is based on an error of law or clearly erroneous assessment of the evidence" and "generally occurs only where no reasonable person could take the view adopted by the decisionmaker[.]" *Williams v. Kijakazi*, No. CV 21–895, 2022 WL 1123819, at *5 (E.D. La. Mar. 16, 2022) (citing *Smith*, 139 S.Ct. at 1779 n.19, 204 L.Ed.2d 62), *adopted*, No. CV 21–895, 2022 WL 1120084 (E.D. La. Apr. 14, 2022). With regard to factual findings, the Court reviews for "substantial evidence." *Smith*, 139 S.Ct. at 1779 n.19, 204 L.Ed.2d 62. As noted, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek,* 139 S.Ct. at 1154, 203 L.Ed.2d 504 (quotation omitted). Turning to the scope of review, the Court's initial review is limited to whether the Appeals Council erred by dismissing Allison's request for review as untimely. *Smith*, 139 S.Ct. at 1779, 204 L.Ed.2d 62. Absent error, the Commissioner's final decision must be affirmed at this juncture. *See*, *e.g.*, *Williams*, 2022 WL 1123819, at *5. If error is found, however, the Court must determine whether to address the merits of Allison's appeal or remand. *Smith*, 139 S.Ct. at 1779–80, 204 L.Ed.2d 62.

### ii. Timeliness

Consistent with *Smith*,[3] the Court begins with the contested threshold question: Was Allison's request for review filed in a timely manner? *Smith*, 139 S.Ct. at 1779, 204 L.Ed.2d 62. Under the regulations, if a claimant is dissatisfied with the ALJ's decision, she may request that the Appeals Council review that decision. 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). The claimant must file her request for review no more than 60 days after receiving notice of the ALJ's decision. 20 C.F.R. §§ 404.968, 416.1468. She is presumed to have received such notice five days "after the date on the notice," unless she "shows [] that [she] did not receive it within the 5–day period." 20 C.F.R. §§ 404.901(a); 416.1401. Finally, a claimant's request for review is deemed filed on the date that it is placed in the mail. *Monferrato v. Schweiker*, 700 F.2d 869, 869 (2d Cir. 1983).

Here, the notice of the ALJ's decision is dated April 29, 2020. Doc. [11], at 21. In turn, Allison's presumed filing deadline was 65 days later, i.e. July 3, 2020. 20 C.F.R. § 404.901(a); *Willie Ray L. v. Comm'r of Soc. Sec. Admin.*, No. 3:19–CV–2259–M–BK, 2020 WL 7265402, at *1–*2 (N.D. Tex. Nov. 20, 2020), *adopted*, No. 3:19–CV–2259–M–BK, 2020 WL 7260748 (N.D. Tex. Dec. 10, 2020). Through counsel, Allison placed her request for review in the mail on June 24, 2020; the Appeals Council received it on June 29, 2020. Doc. [11], at 6, 21; [13], Ex. 1. Self-evidently, Allison filed her request for review in a timely manner. *Monferrato*, 700 F.2d at 869. By extent, substantial evidence did not support the Appeals Council's determination that Allison's request for review was untimely. *Smith*, 139 S.Ct. at 1779 n.19, 204 L.Ed.2d 62. Likewise, since the Appeals Council limited its decision to the untimeliness of Allison's request for review, the Appeals Council's error was also an abuse of discretion. *Williams*, 2022 WL 1123819, at *5.

---

[3] In passing, the Commissioner did not waive administrative exhaustion as a defense. Doc. [14], at 6–7. *See also Heckler v. Day*, 467 U.S. 104, 109–10, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984).

Notwithstanding the above, the Commissioner argues that the Appeals Council cured any error by extending Allison's filing deadline to September 15, 2020. Doc. [14], at 6–7. That is, by giving Allison an opportunity to *re*file her request for review—and Allison's failure to do so, the Appeals Council's timeliness decision was ultimately correct. *Ibid.* The Court must disagree. Under the regulations, the Appeals Council may extend the claimant's filing deadline only if the claimant's filing is untimely and the claimant demonstrates good cause. 20 C.F.R. § 404.968(b) ("If you show that you had good cause for missing the deadline, the time period will be extended."). Since Allison's request for review was filed in a timely manner, the Appeals Council's decision to extend her filing deadline was a nullity. This argument fails.

### C. Futility

Finally, the Court must consider whether to remand the instant case or reach the merits of Allison's appeal. If a threshold error is found, the *Smith* Court observed, the Administration deprived the claimant of an entire layer of merits-based administrative review. *Smith*, 139 S.Ct. at 1779–80, 204 L.Ed.2d 62. In light of such an error, the Court explained, "fundamental principles" of administrative law counsel that remand is "ordinar[il]y" appropriate, *ibid.*, because the Court cannot "propel" itself into the "domain which Congress has set aside exclusively for the administrative agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). After all, "a judicial judgment cannot be made to do service for an administrative judgment[,]" *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943), because the Court "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry[,]" *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985).[4] Remand has other benefits, too: it

---

[4] To be sure, the Appeals Council is a creature of regulation, not statute. *Smith*, 139 S.Ct. at 1779, 204 L.Ed.2d 62. Nevertheless, the *Smith* Court reasoned that the above principles are applicable here because "a federal court generally

11

gives the Administration "an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In short, remand is appropriate where any remaining substantive questions are assigned to the Administration. *Smith*, 139 S.Ct. at 1780, 204 L.Ed.2d 62.

Nevertheless, the Supreme Court also emphasized that remand is not required in "rarer cases," including, *inter alia*, where it will serve no meaningful purpose. *Id.* at 1780 n.21, 204 L.Ed.2d 62. Generally speaking, remand only serves no meaningful purpose when it "'would be an idle and useless formality[.]'" *BizCapital Bus. & Indus. Dev. Corp. v. Comptroller of Currency of U.S.* [*BizCapital*], 467 F.3d 871, 874 (5th Cir. 2006) (quotation omitted). That is, remand is futile when "'[o]nly one conclusion would be supportable.'" *Ridgewood Health Care Ctr., Inc. v. Nat'l Lab. Rels. Bd.*, 8 F.4th 1263, 1276 (11th Cir. 2021) (quotation omitted). When considering whether remand is appropriate, however, futility turns on the fundamental principles animating the Court's review. *Lorion*, 470 U.S. at 744, 105 S.Ct. 1598; *Knapp v. U.S. Dep't of Agric.*, 796 F.3d 445, 459 (5th Cir. 2015). That is, the Court considers whether the remaining substantive questions, if any, should be resolved by the Administration first. *See*, *e.g.*, *Orlando Ventura*, 537 U.S. at 16, 123 S.Ct. 353; *Lorion*, 470 U.S. at 744, 105 S.Ct. 1598; *Knapp*, 796 F.3d at 459. If there is nothing left for the Administration to consider, the Court may reach the merits. *Lorion*, 470 U.S. at 744, 105 S.Ct. 1598. If, however, a question remains that is assigned to the Administration, remand is appropriate. *Knapp*, 796 F.3d at 459.

---

goes astray if it decides a question that has been delegated to an agency if that agency has not first had a chance to address the question." *Id.* (citation omitted).

12

Therefore, the Court turns to the well-defined division of duties between the Administration and this Court. *Smith*, 139 S.Ct. at 1780, 204 L.Ed.2d 62; *Lorion*, 470 U.S. at 744, 105 S.Ct. 1598.[5] It is axiomatic that the Administration is responsible for fact-finding, including developing the record, weighing evidence, determining credibility, and resolving conflicts of fact. 42 U.S.C. § 405(b). *See also Masterson*, 309 F.3d at 272 (conflicts of evidence); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (credibility); *Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir. 1981) (development of the record). The Administration is also responsible for resolving mixed questions of law and fact. *Bowen v. City of New York*, 476 U.S. 467, 485, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). By contrast, this Court's fact-related responsibilities are quite deferential. For example, the Court determines (i) whether the Administration's final decision is supported by substantial evidence, and (ii) whether additional evidence–submitted only after the Administration's decision–is, *inter alia*, material. 42 U.S.C. § 405(g). Nevertheless, the Court may also address pure questions of law, *Mathews v. Eldridge*, 424 U.S. 319, 331–32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Hallaron v. Colvin*, 578 F. App'x 350, 354 (5th Cir. 2014), and whether the Commissioner applied the correct legal standard, *Perez*, 415 F.3d at 461.

The instant dispute revolves around an unresolved fact question. Doc. [13, 14]. It is readily apparent that, at the *very* least, substantive fact questions should be handled by the Administration first. *Masterson*, 309 F.3d at 272; *Moore*, 919 F.2d at 905; *Ware*, 651 F.2d at 414. While this can be a pure fact question or mixed question of law and fact, *Bowen*, 476 U.S. at 485, 106 S.Ct. 2022, the fact question must be material, *Delco-Remy Div., Gen. Motors Corp. v. N.L.R.B.*, 596 F.2d

---

[5] The *Smith* Court's reasoning presupposes that the Court's futility review encompasses the ALJ's decision. *See*, *e.g.*, 20 C.F.R. §§ 404.967, 404.981. As noted, a *Smith* error occurs when the Appeals Council did not make any merits decision. *Smith,* 139 S.Ct. at 1779, 204 L.Ed.2d 62. If the Court's futility review was limited to that decision, the futility review would *always*, not "ordinarily," require remand. *See*, *e.g.*, *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015). After all, the Appeals Council's decision left no other findings to review. *Ibid.*

1295, 1309 (5th Cir. 1979). While formulated somewhat differently depending on circumstances, Fifth Circuit precedent generally establishes that a fact is material when there is a reasonable possibility that the Administration would come to a different conclusion at the relevant step (here step five) if it had the fact before it. *See*, *e.g.*, *Jones v. Heckler*, 702 F.2d 616, 621–22 (5th Cir. 1983). *See also Sun,* 793 F.3d at 511 (failure of Appeals Council to discuss additional evidence); *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (prejudice flowing from failure to develop record). This approach is appropriate because it is generally consistent with this Court's statutorily-defined authority, 42 U.S.C. § 405(g), generally consistent with our case law, *Jones*, 702 F.2d at 621–22; *Sun,* 793 F.3d at 511; *Kane*, 731 F.2d at 1220, and appropriately deferential to the Administration's fact-finding responsibilities, 42 U.S.C. § 405(b).

Notwithstanding the above, the Commissioner appears to argue that this Court must address Allison's records as if she submitted these records to this Court in the first instance. Doc. [14], at 7–10. While it is true that Section 405(g) authorizes consideration of evidence submitted for the first time at the district court level, the legal doctrine identified by the Commissioner is not applicable here due to two interrelated reasons: (i) the timing of Allison's evidentiary filing, and (ii) the procedural posture of this case. *Bradley v. Bowen*, 809 F.2d 1054, 1057–58 (5th Cir. 1987). To begin with, the timing of the claimant's filing of evidence influences the appropriate analysis. *See*, *e.g.*, *Davidson v. Colvin*, 164 F. Supp. 3d 926, 941–42 (N.D. Tex. 2015). For example, the ALJ's decision to *ignore* evidence is treated differently than additional evidence submitted after the conclusion of administrative proceedings. *Compare Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000), *with Ripley*, 67 F.3d at 555. Here, Allison submitted her additional evidence to the Administration *before* the Appeals Council reached a decision. Doc. [13], Ex. 1, at 1. The Commissioner concedes as much. Doc. [14], at 7. In additional evidence cases, by contrast, the

evidence is submitted to the district court first. 42 U.S.C. § 405(g); *Bradley*, 809 F.2d at 1057–58. Second, and relatedly, the Court's instant analysis arises from a different legal source than *Bradley* and related cases. *Compare Knapp*, 796 F.3d at 459 (applying above-mentioned agency principles), *with Bradley*, 809 F.2d at 1057–58 (additional evidence test). On one hand, as noted, the Court's futility analysis springs from "fundamental principles" of administrative law that heavily favor allowing an agency to address questions delegated to it first. *Smith*, 139 S.Ct. at 1779, 204 L.Ed.2d 62; *Salfi*, 422 U.S. at 765, 95 S.Ct. 2457. By contrast, Section 405(g) specifically empowers a court to consider evidence submitted to it in the first instance. 42 U.S.C. § 405(g); *Bradley*, 809 F.2d at 1057–58. For these reasons, this argument fails. Now, the Court turns to apply the above test to this case.

Here, the Appeals Council did not make any findings in connection with Allison's additional evidence, Doc. [11], at 8, which Allison submitted after the ALJ entered her decision, Doc. [13], Ex. 2. Allison's additional evidence, i.e. Dr. Gessler's medical opinion, places greater limitations on Allison's ability to work than the ALJ's RFC. *Compare* Doc. [11], at 28–33, *with* Doc. [13], Ex. 2, at 6. In particular, Dr. Gessler concluded that Allison was not only limited to light work but also unable to ever lift over her head or push, pull, or lift more than 10 pounds. Doc. [13], Ex. 2, at 6. By contrast, the ALJ merely limited Allison to occasionally lifting over her head with her dominant, right shoulder. Doc. [11], at 28–33. If fully credited, Dr. Gessler's medical opinion could limit Allison to sedentary work. 20 C.F.R. §§ 404.1567(a), 416.967(a). Furthermore, the Court must also account for the fact that the ALJ concluded that Allison is approaching advanced age, 20 C.F.R. §§ 404.1563(d), 416.963(d), and has a limited education, 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3). These facts push her case further in the direction of disability. For these reasons, if the Administration had this medical opinion in front of it, there is a reasonable

possibility that it would reach a different conclusion. *Compare* Doc. [11], at 28–33, *with* Doc. [13], Ex. 2, at 6.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that this case should be remanded for further consideration.

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 10th day of August 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE